Argued July 7, reversed and remanded September 13, petition for
rehearing denied by opinion December 20, 1977
See 280 Or 623, 572 P2d 1004

# WESTERN WOOD MOULDING &
# MILLWORK PRODUCERS, INC., *Appellant,*
## *v.*
# ARGONAUT INSURANCE COMPANY, *Respondent.*
## (No. 411-441, SC 24829)

569 P2d 1

Thomas S. Moore, Portland, argued the cause for appellant. With him on the brief were Morrison, Dunn, Cohen, Miller & Carney, Portland.

William R. Miller, Jr., Portland, argued the cause for respondent. With him on the brief were William L. Hallmark, and Jones, Lang, Klein, Wolf & Smith, Portland.

Before Denecke, Chief Justice, and Holman, Howell, and Lent, Justices.

HOLMAN, J.

## HOLMAN, J.

This action was brought by an insured, an association of manufacturers, against its insurer to recover a portion of the dividends allegedly declared on a group policy of workmen's compensation insurance. Plaintiff claims that the defendant wrongfully withheld payment of a portion of the dividends from the third of three successive policy years. The case was tried to the court without a jury and plaintiff appealed from a judgment for defendant.

Plaintiff is an association of 42 companies which purchased three identical (for the purposes of this case), separate and successive yearly policies of workmen's compensation insurance from defendant. Plaintiff alleged its claimed cause of action as follows:

"V.

"Plaintiff at all material times was insured with defendant Argonaut Insurance Company under the terms and conditions of a 'Standard Workmen's Compensation and Employers' Liability Policy' similar to the one attached hereto, marked 'Exhibit A' and by this reference incorporated herein.

"VI.

"Plaintiff was induced to purchase and retain said policy by the representations and actions of the defendants, and each of them, as follows:

"1. That 12 months after the close of each policy year calculations would be made based upon claims paid and reserves established and based upon those calculations a dividend might be declared payable to plaintiff.

"2. That once a dividend was declared, a sum equal to 75% of that dividend would be paid to plaintiff immediately with the remaining 25% payable one year thereafter after adjustments to reflect actual losses plus reserves.

"3. That after the final 25% of the dividend had been paid, the premiums, reserves and dividends were final and would not be reopened.

[ 321 ]

## "VII.

"Contrary to the insurance policy and defendants' representations, the defendants readjusted certain reserves after a policy year had been closed and the final dividend paid, and as a result the sum of $28,723 was wrongfully withheld from plaintiff's later dividends.
"* * * * *."

One year after the termination date of the third policy, a dividend for that policy, as of that time, was calculated as being $114,441, and 75 percent of that amount was paid plaintiff. At the end of the next year defendant recomputed the dividend, taking into consideration the claims paid and reserves for unpaid claims, as of that time, not only for the third policy but also for the policies for the first two years.

Essentially, the dispute arises from plaintiff's contention that the dividend is computed, paid and closed as the settled claims and reserves for unsettled claims exist at the end of two years after the expiration of the policy year, as compared with defendant's contention that as long as the policy is renewed each year, all policies for prior years are annually recomputed to conform with the actual facts as of that time and adjustments are made accordingly in the amount of the dividends to be paid. Because of the updated claim and reserve experience in the first two years, plaintiff received $28,723 less as dividends from the third year than would have been the case had there not been a recomputation of the first two years.

Section 18 of the policy contains the provisions concerning the declaration and payment of dividends:

"18. Participating Provision. The named insured shall be entitled to participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with law after expiration of the policy period to which the dividend is applicable."

In effect, plaintiff contends that the usual company policy by which dividends were determined was ex-

plained to it as set forth in its complaint and thus became part of the policy. The trial court found that the company policy for the determination and payment of dividends was as contended by defendant and testified to by defendant's witness, and it entered judgment accordingly since Section 18 of the policy gave defendant the right to set the conditions upon which dividends would be paid.

Much of the difficulty in disposing of this appeal arises as the result of the way in which the case was tried. Plaintiff's complaint alleged that defendant recomputed dividends already paid to reflect subsequent losses contrary to the manner in which defendant had represented they would be computed, and that defendant then deducted the losses from plaintiff's dividends for a later year. However, plaintiff's evidence in its case in chief consisted only of testimony that dividends had been declared and paid for the first two policy years and that $114,441 in dividends had been declared for the third year but only part of those dividends had been paid. It presented no testimony concerning any representations regarding the computation of dividends.

Defendant, in its case in chief, responded with testimony that $114,441 had not been declared for the third year but that this sum was only a preliminary or temporary figure upon which to pay a partial dividend which was subject to recomputation on the basis of subsequent experience on claims filed under the first two policy years as well as on claims filed under the third year. In doing so, it necessarily showed its usual method of declaring and paying dividends. This method was contrary to the unproved allegation of plaintiff's complaint. Plaintiff, on rebuttal, attempted to prove the representations it had alleged in its complaint concerning the manner in which defendant paid dividends. The trial court ruled that plaintiff could not do so, apparently on the ground that it was not proper on rebuttal to prove a different theory of recovery than that which had been presented in

plaintiff's case in chief. This exclusion of evidence is the principal basis for plaintiff's appeal.

■ It is apparent that at least some of the proffered evidence was admissible for the purpose of disproving defendant's testimony. Out-of-court statements by defendant's representative to plaintiff that defendant's usual practice in the declaration and payment of dividends was not as testified by defendant's witnesses would always be admissible for that purpose. The statements would also be admissible to prove that, contrary to defendant's testimony, defendant had no right to recompute the first and second year's dividends after each had been paid and to deduct the subsequent losses for those years from dividends for the third year, because defendant had, by its representations, agreed it would not do so. This evidence would always be admissible for these purposes regardless of whether or not the representations claimed to have been made by defendant had been alleged in plaintiff's complaint; and we know of no rule which prevents plaintiff from aiding its case in chief by rebuttal evidence so long as the evidence is proper for the purpose of rebutting defendant's case in chief. Error was committed in excluding the evidence, and it is not possible for us to determine how the trial court would have decided the case had this evidence been considered.

Defendant claims the admissibility of the evidence concerned the order of proof and thus was within the trial court's discretion. However, the trial court had discretion only within legal boundaries. It did not have the discretion to reject plainly relevant and admissible evidence. Although at first we thought that perhaps plaintiff had not told the trial court the correct reasons for the admissibility of the evidence, we now conclude from the trial court's questioning of defendant's counsel that the trial court did consider the reasons given in this opinion for the admissibility of the evidence. The trial court specifically asked defendant's counsel why these reasons would not be applicable.

■ Defendant claims that any error in excluding the evidence in question is immaterial because plaintiff is prevented from recovery, in any event, by California statutory law as interpreted in the case of *Contractor's Safety Ass'n. v. California Comp. Ins. Co.,* 48 Cal2d 71, 307 P2d 626 (1957). In the cited case, an insurance company had promised an insured that if its loss ratio was below a certain percent of the premium, it would pay a dividend according to a given schedule. The court held the agreement void as violating a California statute, the purpose of which was to require a premium rate which assured adequate reserves to meet claims as they matured. The obvious purpose of such a statutory provision is the protection of workmen in the state of California and not the protection of workmen in other states under policies issued in those states by a California insurer. The protection of workers in other states is the concern of those other states, and defendant has raised no issue concerning any Oregon statute or regulation which prevents the kind of declaration and computation of dividends contended for by plaintiff in this case.

Because of our disposition of the above matter, it is unnecessary to dispose of the other assignments of error. We decline the invitation to dispose of the case finally under authority of Article VII, Section 3, of the Oregon Constitution.

The judgment of the trial court is reversed and the case is remanded for a new trial.